UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

C.L.Z.,

Petitioner,

v.

RAUL MALDONADO JR., in his official capacity as Warden of Metropolitan Detention Center; KENNETH GENALO, in his official capacity as Director, New York Field Office, Enforcement and Removal Operations, Immigration and Customs Enforcement; MARKWAYNE MULLIN, in his official capacity as Secretary, U.S. Department of Homeland Security; SIRCE OWEN, in her official capacity as Acting Director, Executive Office for Immigration Review; and TODD BLANCHE, in his official capacity as U.S. Attorney General,,

Respondents.

**MEMORANDUM & ORDER**
26-CV-5271 (HG)

**HECTOR GONZALEZ**, United States District Judge:

On or about April 18, 2026, U.S. Immigration and Customs Enforcement ("ICE") arrested Petitioner C.L.Z. at a Nassau County Police precinct. Petitioner was ultimately transferred to the Metropolitan Detention Center in Brooklyn, where he remains detained. He now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. *See generally* ECF No. 1.[1] For the reasons that follow, his Petition is GRANTED.

[1] Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations. The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

## BACKGROUND[2]

Petitioner is a citizen of El Salvador who entered the United States without inspection or admission in or around 2015. *See* ECF No. 1 ¶¶ 19. Petitioner was initially detained in Texas before he applied for asylum at an Immigration Court in Texas, applied for release on bond, was released, and, eventually, moved to New York to be near his family. *See id.* ¶ 21. Since 2015, Petitioner has lived primarily in Nassau County, and "supported himself by working in construction." *Id.* ¶ 22. Petitioner's "record of encounters with law enforcement consists of a single arrest [by the Nassau County Police Department] on April 17, 2026, under N.Y. [Vehicle and Traffic Law] § 1212 for allegedly reckless driving, and N.Y. [Penal Law] § 120.20 for alleged reckless endangerment, both misdemeanor charges." *Id.* ¶ 23. In connection with Petitioner's April 17, 2026, arrest, the Nassau County Police Department notified ICE of its encounter with Petitioner and "ICE officers subsequently . . . arrested Petitioner and detained him pursuant to 8 U.S.C. § 1225(b)(2)(A)." ECF No. 9 at 1–2. ICE officers took Petitioner into custody from the Nassau County Police precinct. ECF No. 1 ¶ 24.

Petitioner initiated an action on August 26, 2026, by filing a petition for a writ of habeas corpus. *See* ECF No. 1 ("Petition"). The next day, the Court issued an Order to Show Cause, directing the government to show cause "why the petition should not be granted, and why Respondents should not be ordered to immediately release Petitioner from detention, in light of the Second Circuit's holding in *Barbosa da Cunha v. Freden*, 175 F.4th 61, 96 (2d Cir. 2026), and directing the government to "address whether Petitioner is being detained pursuant to 8 U.S.C. § 1225 or § 1226." *See* Aug. 27, 2026, Text Order.

---

[2] The Court relies on evidence submitted by the parties in outlining the facts relevant to this Order. The facts recited here are undisputed unless otherwise noted. *See O.F.B. v. Maldonado*, 810 F. Supp. 3d 394, 398 n.2 (E.D.N.Y. 2025).

The government filed its response on September 3, 2026, in which it sets forth its position that although Petitioner was encountered, arrested, and detained pursuant to 8 U.S.C. § 1225(b)(2)(A) in April 2026, on or about May 12, 2026, two weeks after the Second Circuit issued its decision in *Barbosa da Cunha*, ICE determined that "Petitioner was subject to detention under Section 1226(a), [even though] he had not initially been arrested and detained under Section 1226(a)." ECF No. 9 at 2 ("Response"); ECF No. 9-1 ¶ 41 (Declaration of Felix Martinez Genao in Support of the Response). Six days later, Petitioner filed his reply. *See* ECF No. 10 ("Reply").

## **<u>LEGAL STANDARD</u>**

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Harrington v. Richter*, 562 U.S. 86, 91 (2011); *see also Ozturk v. Hyde*, 136 F.4th 382, 393 (2d Cir. 2025). A petition for a writ of habeas corpus under Section 2241, "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-cv-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)).

Particularly relevant here is the Second Circuit's recent decision in *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026). There, the Circuit held that Section 1226(a), not Section 1225(b)(2)(A), applies to noncitizens like Petitioner who were already present in the United States for several years when they were apprehended. 175 F.4th at 96.

## DISCUSSION

Petitioner seeks habeas release based on: (1) unlawful detention "pursuant to a statutory misclassification in violation of the [Immigration Nationality Act]"; and (2) the government's detention of him without individualized review in violation of the Due Process Clause, among other claims.[3] *See* ECF No. 1 ¶¶ 28–40.

The government argues that, even if "ICE violated Petitioner's due-process rights by failing to conduct a Section 1226(a) custody determination contemporaneously with his arrest, that earlier violation does not render his present detention unlawful [because] ICE has provided the individualized process Section 1226(a) requires." ECF No. 9 at 3. In effect, the government's view is that, even if the individualized custody determination it conducted was almost a month after Petitioner's detention and two weeks after the Second Circuit's decision in *Barbosa da Cunha*, the fact that Petitioner "has received an individualized custody determination and will receive a bond hearing should he request one," is sufficient for purposes of due process and "habeas release is not warranted." *See id.* at 3–4, 8–10. Not so. In fact, there are two problems with the government's argument.

### I. The Government's Post Hoc Rationalization for Petitioner's Detention is Improper

The first problem with the government's argument is that it has already been rejected by several courts including the Supreme Court and several courts in this District. Indeed, "[t]he basic rule here is clear: An agency must defend its actions based on the reasons it gave when it acted." *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 24 (2020). In

---

[3] The Court need not address Petitioner's other claims, given its conclusion that Petitioner's initial custody under 8 U.S.C. § 1225 and his subsequent custody under 8 U.S.C. § 1226(a) were procedurally deficient, in violation of the Due Process Clause of the Fifth Amendment.

fact, in recent cases with nearly analogous facts in this District, courts have made clear that: "an executive agency, like ICE, is bound by the bases it used to justify its decision—here the arrest and detention—in the first instance, not reasons it comes up with afterwards," *Inestroza Carbajal v. Frazier*, No. 26-cv-2778, 2026 WL 1309265, at *1 (E.D.N.Y. May 12, 2026) (collecting cases, including *Regents of the Univ. of California*, 591 U.S. at 21, 24); and "[t]o argue that [Petitioner] was detained under one statutory provision but may be continuously detained under another one since the Circuit ruled the first one inapplicable, is exactly the kind of post hoc rationalization that the Supreme Court deemed impermissible," *Pastrana-Beltran v. Mullin*, No. 26-cv-2657, 2026 WL 1398609, at *2 (E.D.N.Y. May 19, 2026) (citing *Regents of the Univ. of California*, 591 U.S. at 22–23). Stated otherwise, Petitioner is entitled to habeas relief because the government "cannot create a post hoc rationalization for [his] detention." *Pastrana-Beltran*, 2026 WL 1398609, at *2.

## II. ICE's Individualized Custody Determination was Inadequate

The second problem with the government's argument is that despite its insistence that "Petitioner has since received the individualized process he claims was lacking," ECF No. 9 at 5, the individualized custody determination the government highlights is constitutionally deficient. As the parties are aware, Section 1226(a) affords Petitioner "an initial custody determination *before* exercising discretionary detention that entails an assessment of whether he can demonstrate that he is neither a danger to persons or property, nor a flight risk." *Pastrana-Beltran*, 2026 WL 1398609, at *2 (citing 8 C.F.R. §§ 1003.19(a), (f), 1236.1(d)(1)) (emphasis in original); *Gopie v. Lyons*, No. 25-cv-05229, 2025 WL 3167130, at *2 (E.D.N.Y. Nov. 13, 2025) (noting "judges have interpreted [Section 1226(a)] this way: before or contemporaneous with detaining a noncitizen, there must be a custody determination" and collecting cases); *see also Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 492–93 (S.D.N.Y. 2025) ("[B]efore the

Government may exercise such discretion to detain a person, § 1226(a) and its implementing regulations require ICE officials to make an individualized custody determination.").

The problem here is not only that the individualized custody determination was conducted nearly a month after Petitioner's arrest and initial detention and two weeks after the Second Circuit's decision in *Barbosa da Cunha*, but also that the government asks the Court to take its word at face value. In connection with its Response, the government attached a copy of the Initial Custody Determination Form that it completed on or about May 12, 2026. *See* ECF No. 9-7 (INA § 236(a) Initial Custody Determination Form, Exhibit F to the government's Response (the "Form")). The Form indicates that Petitioner "is subject to [Section 1226(a)]," but fails to indicate whether "the individual established that he/she does not pose a danger to persons or property" or whether "the individual established that he/she does not pose a flight risk." *Id.* The government argues that it need not complete the form because "ICE determined that, although Petitioner was subject to detention under Section 1226(a), he had not initially been arrested and detained under Section 1226(a), was not initially detained by ERO-NY, and had previously received a bond hearing before an immigration judge, and thus fell outside the [*Velesaca v. Decker*, No. 20-cv-01803 (S.D.N.Y. Mar. 10, 2022)] class." ECF No. 9 at 2. Whether Petitioner is or is not a member of the *Velesaca* class is immaterial—the value of the form, which the government fails to grasp, is that it is often the only basis for the Court to assess "whether and how correct procedures were applied at all . . . and ultimately, whether Petitioner's detention comports with due process." *Quille v. Blanche*, No. 26-cv-2818, 2026 WL 1453889, at *3 (E.D.N.Y. May 22, 2026) (quoting *Pastrana-Beltran*, 2026 WL 1398609, at *3; citing *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001)); *Cajamarca-Janza v. Soto*, No. 26-cv-3066, 2026 WL 1506777, at *3 (E.D.N.Y. May 29, 2026) (same). Instead of substantiating its claim that

Petitioner was afforded a meaningful, individualized review, the government only attaches a Declaration of Deportation Officer Felix Martinez Genao, that states "ICE determined that Petitioner failed to establish that he did not pose a danger to persons or property due to his pending charges for Reckless Endangerment and Reckless Driving." ECF No. 9-1 ¶ 33. This statement fails to meet the moment—the sparse information that is available on the form indicates that Petitioner's custody determination was not conducted by the declarant but by another officer, *see id.* at 3, and it does not otherwise indicate how the declarant, who did not conduct the interview, would know why Petitioner was detained.[4]

At best, the government's declaration without substantiation amounts to a litigation position, not meaningful proof that Section 1226(a)'s requirements were met, at worst, it amounts to the type of post hoc rationalization of Petitioner's detention that this Court and others have already rejected. *See supra* Part I; *see also Quille*, 2026 WL 1453889, at *4 (rejecting the "sort of reasoning [that] creates a heads-I-win-tails-you-lose scenario that . . . that this Court and others have already rejected as 'constitutionally untenable'").

[4] To be sure, the Court appreciates that Section 1226(e) provides that ICE's discretionary judgment regarding the application of Section 1226(a) shall not be subject to review, 8 U.S.C. § 1226(e), however, "that is not the Court's inquiry here," *Pastrana-Beltran*, 2026 WL 1398609, at *3. "Rather than impermissibly pry behind the discretionary curtain, the Court assesses whether and how correct procedures were applied at all (they were either not applied or applied erroneously) and ultimately, whether [Petitioner]'s detention comports with due process (it does not)." *Quille*, 2026 WL 1453889, at *3 (quoting *Pastrana-Beltran*, 2026 WL 1398609, at *3). Here, "the Court's assessment of 'whether and how correct procedures were applied' leads it to the inescapable conclusion that, with respect to Petitioner's initial custody determination, the relevant procedures were, at the very least, 'applied erroneously.'" *Id.* (quoting *Pastrana-Beltran*, 2026 WL 1398609, at *3).

* * *

Taken together, Petitioner was denied due process because he was subjected to the kind of post hoc rationalization that the Supreme Court deems impermissible, *see Regents of the Univ. of California*, 591 U.S. at 22–23, and because the process that he did receive was inadequate.[5] These failings render his detention invalid. *See Pastrana-Beltran*, 2026 WL 1398609, at *2–3 (granting habeas relief and ordering petitioner's release because the government "did not apply the test [Section] 1226(a) requires, and which the [initial custody determination] form itself instructs"); *Lopez Benitez*, 795 F. Supp. 3d at 497 (granting habeas relief and ordering petitioner's release "given the nature of the constitutional violation [he] sustained" by the government's failure to properly conduct an "individualized assessment before detaining him"). Accordingly, Petitioner's continued detention violates his due process rights. The "typical remedy" for "unlawful executive detention" is "of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973) ("The traditional function of the writ [of habeas corpus] is to secure release from illegal custody"; it is the "usual remedy by which a man is restored again to his liberty, if he ha[s] been against law deprived of it."). And, because "any post-deprivation review by an immigration judge would be inadequate," *Lopez Benitez*, 795 F. Supp. 3d at 497, the government's ongoing detention entitles him to immediate release.

---

[5] For the avoidance of doubt, the government's argument that Petitioner must exhaust his administrative remedies before seeking the Court's intervention," ECF No. 6 at 3–5, is unavailing. It is well-settled that Petitioner "is not required to exhaust a process that was deficient from the outset." *Gopie*, 2025 WL 3167130, at *3. Nevertheless, because courts may excuse exhaustion when a petitioner has raised a substantial constitutional question, the Court excuses exhaustion—if any was required—because Petitioner has raised such a constitutional question. *See Arango v. Genalo*, No. 25-cv-6720, 2025 WL 3637500, at *3 (E.D.N.Y. Dec. 16, 2025).

## CONCLUSION

For these reasons, Petitioner's arrest and detention violate the Due Process Clause of the Fifth Amendment, and his Petition for a writ of habeas corpus, ECF No. 1, is GRANTED.

The government is directed to immediately release Petitioner from custody and is further directed to certify compliance with the Court's Order by filing a letter on the docket no later than 6:00 p.m. on September 15, 2026. The Court further orders that Petitioner shall not be re-detained without notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, where the government will have the burden of showing by clear and convincing evidence that his detention is authorized under 8 U.S.C. § 1226(a). This Order includes "an injunction barring deprivation [of any] of the [Petitioner's] rights without the requisite procedural protections." *Khabazha v. United States Immigr. & Customs Enf't*, No. 25-cv-5279, 2025 WL 3281514, at *8 (S.D.N.Y. Nov. 25, 2025) (ordering government release petitioner from "restrictions on his liberty imposed as a result of his unlawful [detention] . . . including the ankle monitor and reporting requirements" and return petitioner to "the status quo ante").

For the avoidance of doubt, nothing in this Order shall be construed as a determination of the lawfulness of the government's right to detain Petitioner in the future pursuant to proper application of the procedures in 8 U.S.C. § 1226(a) or (c)(1), nor shall anything herein be construed as to preclude the government from holding a burden-shifted hearing if it seeks to detain Petitioner in the future. *See J.C.G. v. Genalo*, No. 24-cv-08755, 2025 WL 88831, at *7 (S.D.N.Y. Jan. 14, 2025) (collecting cases where courts ordered that the government bear the burden of demonstrating by clear and convincing evidence that discretionary detention was justified).

The Clerk of Court is respectfully directed to enter judgment consistent with this Order and close the case.

SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
September 15, 2026